IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARILYN GAYE PIETY FOLEY,<br>**Plaintiff,**<br><br>v.<br><br>DREXEL UNIVERSITY, DAVID S.<br>BROWN, ROGER KURTZ, and JUHWON<br>LEE,<br>**Defendants.** | CIVIL ACTION<br><br><br><br>NO.  25CV2103 |

## MEMORANDUM OPINION

Defendant Drexel University has filed a motion for a protective order pursuant to Federal Rule of Civil Procedure 26(c)(1)(A) and (D) seeking to prevent Plaintiff, Marilyn Gaye Piety Foley, a tenured professor of philosophy in Drexel's Department of English and Philosophy within Drexel's College of Arts and Sciences, from questioning a witness noticed under Federal Rule of Civil Procedure 30(b)6) on certain topics.  Fed. R. Civ. P. 26(c)(1)(A) and (D).  For the reasons that follow, Drexel's Motion for a Protective Order shall be granted in part and denied in part.

### I.    BACKGROUND

In April 2025, Piety Foley sued her employer, Drexel University ("Drexel"), and three Drexel employees—Defendants David S. Brown, Dean of the College of Arts and Sciences; Roger Kurtz, head of the Department of English and Philosophy; and Juhwon Lee, Associate General Counsel and Chief, Litigation Services, at Drexel University.  The only claims she makes in her complaint are that they retaliated against her in violation of the Equal Pay Act of 1963, 29 U.S.C. § 215(a)(3), and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681.  After a motion to dismiss, the only surviving theory supporting those claims is that

Defendants Drexel, Brown, and Kurtz retaliated against her bringing suit and securing judgment against them in a prior lawsuit, *see Piety Foley v. Drexel*, Case No. 22-cv-1777 ("*Piety Foley I*"), by changing Piety Foley's face-to-face courses to online without informing or consulting her as they should have under applicable policies, in an effort to drive her off campus.

Piety Foley's Notice of 30(b)(6) Deposition sets out the following topics on which it seeks to question Drexel's designated witness:

- Amended Topic 12 (the "Settlement Topic"): "Drexel's refusal, up to the time of service of the Complaint in this instant case, to settle the previous litigation with Dr. Piety (22-cv-1777) unless she terminated her employment with Drexel."[1]

- Amended Topic 4 (the "Summary Report Topic"): "The external review described in the 'Summary Report of External Title VI Review: Non-Discrimination Practices & Speech Policies' limited to the subject of 'Barriers to Reporting,' which is set forth as a section in the Summary Report (second page) sent to Drexel employees on or about February 17, 2025."[2]

- Amended Topic 3 (the "Retaliation Complaints Topic"): "The complaints (via formal internal complaint, complaint to OED/EIC, complaint to PHRC and/or EEOC, or in a federal or state court) against Drexel employees from January 1, 2021 through the present for allegedly violating Drexel rules, policies, procedures, practices, and/or customs, and/or federal or Pennsylvania or Philadelphia law, regarding retaliation against employees who engage in protected activity regarding illegal discrimination."[3]

Drexel seeks an order: (1) prohibiting Piety Foley from deposing Drexel concerning the Settlement Topic and the Summary Report Topic; and, (2) limiting the Retaliation Complaints

---

[1] Plaintiff has made clear to Drexel that she does not seek attorney-client privileged information or work product for this topic.

[2] Plaintiff has likewise communicated to Drexel that she does not seek attorney-client privileged information/attorney work product for this topic.

[3] In her Response Letter to Drexel's Letter detailing the present discovery dispute (ECF No. 27), Piety Foley offered to "limit the formal internal complaints to complaints by and against College of Arts and Sciences (which Defendant Dean Brown heads)" faculty.

Topic to retaliation complaints involving only those individuals Drexel deems relevant to Piety

Foley's allegations—namely, Philosophy Program Director Peter Amato, Defendant Kurtz, and

Defendant Brown.

## II.    LEGAL STANDARD

### A.  Discovery

The scope of discovery under the Federal Rules of Civil Procedure "is unquestionably

broad." *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999).  Under Federal Rule of

Civil Procedure 26(b)(1), a party "may obtain discovery regarding any nonprivileged matter that

is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R.

Civ. P. 26(b)(1).

Discovery does, however, have its limits.  *Bayer*, 173 F.3d at 191.  Rule 26(c) permits a

party to move for a protective order limiting discovery, including "forbidding inquiry into certain

matters" in order "to protect a party or person from annoyance, embarrassment, oppression, or

undue burden or expense."  Fed. R. Civ. P. 26(c)(1).  The party seeking the protective order has

the burden of persuasion and must show "good cause by demonstrating a particular need for

protection." *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986).  "Broad

allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy

the Rule 26(c) test."  *Id*.

"Good cause" is defined as a "showing that disclosure will work a clearly defined and

serious injury to the party seeking closure." *Arnold v. Pennsylvania*, 477 F.3d 105, 108 (3d Cir.

2007) (quoting *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1986)).  It is

established based on "balancing a number of considerations[,]" *Arnold*, 477 F.3d at 108 (citing

*Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3d Cir. 1994)), including, but not limited to:

3

"(1) the interest in privacy of the party seeking protection; (2) whether the information is being sought for a legitimate purpose or an improper purpose; (3) the prevention of embarrassment, and whether that embarrassment would be particularly serious; (4) whether the information sought is important to public health and safety; (5) whether sharing of the information among litigants would promote fairness and efficiency; (6) whether the party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public." *Arnold*, 477 F.3d at 108 (citations omitted).[4]

Yet, as a threshold matter, "before the party seeking a protective order must demonstrate good cause" the party seeking discovery must first "demonstrate . . . relevance." *Gardner v. Boone*, 2023 WL 1927992, at *2 (E.D. Pa. Feb. 9, 2023) (citing *Bell v. Lockheed Martin Corp.*, 270 F.R.D. 186, 195 (D.N.J. 2010), *aff'd*, 2010 WL 3724271 (D.N.J. Sept. 15, 2010)). In the context of discovery, relevance does not mean admissible into evidence; instead, it is "construed broadly to *encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.*" *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor,* 329 U.S. 495, 501 (1947) (emphasis added)). Where relevance is in doubt, the court "should be permissive" in allowing discovery.

---

[4] Much of Drexel's argument that discovery is improper hinges on its contention that the evidence sought is disproportionate to the needs of the case, as emphasized in Rule 26(b)(1). Assessing proportionality under Rule 26(b)(1) involves "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "A simple response that the discovery sought is overly broad, burdensome, oppressive, vague, or irrelevant is insufficient." *Palakovic v. Wetzel*, 2019 WL 6896659, at *4 (W.D. Pa. Dec. 18, 2019).

Yet, here, Drexel seeks a protective order under Rule 26(c)(1). Although Rule 26(c)(1) does not explicitly reference the proportionality requirement, courts have incorporated the Rule 26(b)(1) proportionality analysis into the "undue burden or expense" inquiry under Rule 26(c)(1). *See, e.g., Norfolk S. Ry. Co. v. Pittsburgh & W. Virginia R.R.*, Civ. A. No. 2:11-1588, 2013 WL 6628624, at *2 (W.D. Pa. Dec. 17, 2013) ("The exercise of this discretion [under Rule 26(c)] *is often guided* by the proportionality test under Rule 26(b)." (emphasis added)). Accordingly, the Court will treat Drexel's proportionality arguments through the lens of whether Drexel has established good cause to prevent the requested discovery because it is not proportional to the needs of the case.

*CedarCrestone Inc. v. Affiliated Computer Servs. LLC*, 2014 WL 3055355, at \*4 (M.D. Pa. July 3, 2014) (citing *Foster v. Berwind Corp.*, 1990 WL 209288, \*6 (E.D. Pa. Dec. 12, 1990)).

### B.  Retaliation

Both the Equal Pay Act and Title IX prohibit retaliation against an individual who makes a complaint about discriminatory treatment.  *See* 29 U.S.C. § 215(a)(3) (Under the Equal Pay Act, "it is unlawful for any person . . . [to] discriminate against any employee because such employee has filed any complaint or instituted . . . any proceeding under or related to this chapter . . . ."); *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005) ("Retaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination encompassed by Title IX's private cause of action.").

In the Third Circuit, Equal Pay Act and Title IX retaliation claims are analyzed under the Title VII retaliation framework.  *See Carlson v. Qualtek Wireless, LLC*, 2023 WL 5094566, at \*3 (3d Cir. Aug. 9, 2023) (in a case of first impression, joining sister circuits in applying Title VII framework to the Equal Pay Act retaliation claim); *Doe v. Mercy Catholic Med. Ctr.*, 850 F.3d 545, 564 (3d Cir. 2017) ("Title VII's familiar retaliation framework generally governs Title IX retaliation claims." (internal quotations omitted)).  Under that framework, to succeed on a claim of discriminatory retaliation, a plaintiff must demonstrate that: (1) she engaged in [protected] conduct . . . ; (2) the employer took adverse action against [her]; and (3) a causal link exists between [her] protected conduct and the employer's adverse action."  *Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 201 (3d Cir. 1994).

### III.    DISCUSSION

### A.  Settlement Topic

#### i.  Relevance

Despite Drexel's assertion that its settlement position in *Piety Foley I* has absolutely no bearing on whether Drexel changed the format of Piety Foley's Spring 2025 courses after she won a judgment in *Piety Foley I*, Piety Foley contends that inquiry into Drexel's settlement position in that case is relevant to help prove Defendants' retaliatory intent. She argues that, at the same time Defendants were changing her Spring Term courses to all online in an effort to drive her off campus, they were also attempting, through settlement demands, to drive her out of Drexel altogether.

In seeking discovery regarding settlement communications, courts in this Circuit recognize that the party seeking such discovery must make a heightened, more particularized showing of relevance. *See Dutton v. Todd Shipyards Corp.*, 2009 WL 10674991, at *1 (E.D. Pa. Nov. 17, 2009) ("Because public policy favors the compromise and settlement of disputes, courts place the burden upon the party seeking discovery of a confidential settlement agreement "to make a particularized showing 'that the documents relating to the settlement negotiations are relevant and likely to lead to the discovery of admissible evidence.'" (quoting *Fidelity Fed. Sav. and Loan Ass'n v. Felicetti*, 148 F.R.D. 532, 534 (E.D. Pa. 1993)); *see also Duncan v. Black*, 2018 WL 317957, at *3 (W.D. Pa. Jan. 8, 2018) ("Parties seeking to discover such [settlement] communications must make a heightened, more particularized showing of relevance." (citing *Rhines v. United States*, 2014 WL 3829002, at *3 (M.D. Pa. Aug. 4, 2014)). This particularized showing of relevance requires that such evidence be "reasonably calculated to lead to the discovery of admissible evidence." *Felicetti,* 148 F.R.D. at 533-34.

Pertinent here, to establish the third element, causation, in a retaliation claim, a plaintiff must produce evidence "sufficient to raise the inference that her protected activity was the *likely reason* for the adverse [employment] action." *Carvalho-Grevious v. Delaware State Univ.*, 851

F.3d 249, 259 (3d Cir. 2017). Such evidence "can include inconsistent explanations for the adverse employment action, a pattern of antagonism, temporal proximity" and may also consist of evidence from which "the record as a whole" permits the trier of fact to infer causation. *Lloyd v. Children's Hosp. of Philadelphia*, 2023 WL 2940229, at *5 (E.D. Pa. Apr. 13, 2023) (citing *Carvalho-Grevious*, 851 F.3d at 253). Inquiry into Drexel's settlement position in *Piety Foley I* could contribute to the overall record from which the trier of fact may infer causation in that both of Piety Foley's claims arise from her allegation that Drexel retaliated against her because of that first lawsuit.

Drexel nevertheless argues that such evidence would be barred by Federal Rule of Evidence 408, would be inadmissible at trial, and thus should be barred at the discovery stage. However, that question—whether statements regarding settlement negotiations are admissible or not—remains to be decided should this case go to trial. At this stage, however, Piety Foley has made the requisite showing that discovery concerning the settlement negotiations is reasonably calculated to lead to admissible evidence. *See, e.g.*, *Harris v. Midas*, 2017 WL 3440693, at *5 (W.D. Pa. Aug. 10, 2017) (explaining that statements made during settlement negotiations are admissible at trial when offered for another purpose, "such as to establish an independent violation (here, retaliation) unrelated to the underlying claim which was the subject of the correspondence"); *see also UFORMA/Shelby Bus. Forms, Inc. v. NLRB*, 111 F.3d 1284, 1293-1294 (6th Cir. 1997) (holding that, in an unfair labor practice proceeding, evidence that management threatened retaliation during settlement discussions for employees' engaging in protected activity was admissible at trial). Given that, Piety Foley has met her burden of making a particularized showing that Drexel's settlement positions are relevant and discoverable.

### ii. *Good Cause*

Drexel argues further that, even if the Settlement Topic is relevant, good cause exists to grant a protective order because inquiry into this topic is disproportionate to the needs of the case and creates a severe risk of waiver of the attorney-client privilege.

Drexel contends that forcing it to endure the time and expense of reconstructing three years of negotiation history between Drexel and Plaintiff—with all of Drexel's internal discussions allegedly entangled in attorney-client privilege—would impose a burden completely disproportionate to the amount in controversy and to the importance of the requested discovery in resolving this litigation. However, Plaintiff has made it clear that she does not seek attorney-client privileged information or attorney work product.

With respect to Drexel's burdensome argument, it has not offered, as it must, "specificity and factual detail [on] the exact nature and extent of the burden." *Grider v. Keystone Health Plan Cent., Inc.*, 2007 WL 2874423, at *6 (E.D. Pa. Sept. 27, 2007); *see also Carusone v. Kane*, 2019 WL 5424333, at *2 (M.D. Pa. Oct. 23, 2019) ("A party asserting an unduly burdensome objection to a discovery request has the burden to show facts justifying its objection by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome . . . [by providing] "a factual basis for the claim [and] . . . an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request." (citing *Ehrlich v. Union Pac. R.R. Co.*, 302 F.R.D. 620, 625 (D. Kan. 2014)). Accordingly, Drexel has not shown that the requested discovery is disproportional to the needs of the case. *See Palakovic*, 2019 WL 6896659, at *4; *see also Reynolds v. Wagner*, 128 F.3d 166, 178 (3d Cir. 1997) ("[A]n argument consisting of no more than a conclusory assertion such as the one made here (without even a citation to the record) will be deemed waived."); Local Rule 7.1(c) ("Every motion not certified as uncontested, or not governed by Local Civil Rule 26.1(g), shall be

accompanied by a brief containing a concise statement of the legal contentions *and authorities relied upon* in support of the motion." (emphasis added)).

Drexel has therefore failed to establish good cause for imposing any limitation on this deposition topic beyond the limitations to which Piety Foley has already agreed.

### B. Summary Report Topic

#### i. *Relevance*

Drexel next contends inquiry into the Summary Report Topic should be prohibited in that it is not relevant to the claims made here. Drexel maintains that the Summary Report was motivated by, and focused on, the specific political and cultural context of the Israel-Gaza conflict and growing concerns about antisemitism: The "barriers to reporting" about which Piety Foley seeks testimony, says Drexel, concern context-specific issues that have no relevance to her allegations that she was retaliated against for winning an Equal Pay Act jury trial. Piety Foley's response is that Drexel's culture of retaliation, and awareness of it through the surveys described in the Summary, are relevant to showing retaliatory intent. Specifically, she argues that the topic may reveal whether Drexel employees are adequately trained to avoid retaliating against fellow employees who have reported illegal discrimination and whether they are—accordingly— positioned to retaliate with impunity.

Given the forgiving standard for establishing causation under the Equal Pay Act and Title IX, as well as the broad scope of discovery under the Federal Rules of Civil Procedure, Piety Foley has met her burden of establishing relevance. Even if the Summary Report arose in a different context, evidence of a culture of retaliation at an institution—particularly evidence of inadequate training to prevent retaliation—could reasonably lead to other evidence bearing on whether causation exists in Piety Foley's retaliation claims. *See Turlip v. N. Pocono Sch. Dist.*,

2006 WL 547924, at *11 (M.D. Pa. Mar. 6, 2006) ("A Plaintiff may rely upon circumstantial or indirect evidence to establish her [Title VII] retaliation claim."). Accordingly, Piety Foley has satisfied her burden in establishing relevance.

### ii. Good Cause

Drexel contends that, even if the Summary Report Topic is relevant, good cause exists to grant a protective order because inquiry into this topic is disproportionate to the needs of the case. It grounds this contention in the representation that no current Drexel employee has sufficient expertise or knowledge to provide competent testimony concerning the Summary Report Topic; that the external review involved several Drexel departments and key personnel, one of whom is no longer employed by Drexel; and that outside legal counsel and an outside consulting firm possess the bulk of the material relevant to the Summary Report Topic.

Importantly, "a party cannot obtain a protective order simply by claiming that the witness lacks any relevant knowledge, as the deposing party is certainly entitled to test the witness's purported ignorance." *In re Plastics Additives Antitrust Litig.*, 2007 WL 9825893, at *2 (E.D. Pa. July 18, 2007); *see also* 8A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2037 (3d ed.) ("A witness ordinarily cannot escape examination by denying knowledge of any relevant facts, since the party seeking to take the deposition is entitled to test the witness's lack of knowledge."). Because Drexel's argument centers on the lack of knowledge of any witness it controls and it offers no further argument that the discovery sought is disproportionate, it has failed to establish good cause by demonstrating an undue burden.[5]

---

[5] Drexel further asserts that inquiry into the Summary Report Topic would infringe on the attorney-client privilege and the privacy interests of Drexel students, staff, and faculty. First, Piety Foley asserts that she does not seek any privileged information or attorney work product. Second, Drexel's assertion that the inquiry would infringe on the privacy interests of students, staff, and faculty is, at most, a broad allegation of harm, rather than a showing of a "clearly defined and serious injury." *See Cipollone*, 785 F.2d at 1121; *Arnold*, 477 F.3d at 108.

Accordingly, the Court declines to limit discovery on this topic beyond the limitations to which Piety Foley has already agreed.

### C. Retaliation Complaints Topic

#### i. Relevance

Drexel lastly contends that, because Piety Foley's inquiry into retaliation complaints is not limited to those made specifically against her supervisors, her requested discovery is not relevant to this matter. Conversely, Piety Foley argues that inquiry into retaliation complaints by and against College of Arts & Sciences faculty, *i.e.* those under the Dean's supervision, is relevant to how the Dean's Office addresses—or fails to address—such complaints.

Drexel's argument in support of a limitation here primarily addresses Piety Foley's original deposition request for inquiry into complaints by and against *all Drexel employees*, and not her suggested limitation to complaints by and against *only* College of Arts & Sciences faculty. Drexel is correct that Piety Foley has not established relevance as to the original inquiry, as she has not alleged any facts showing how retaliation against faculty in an entirely different department or section of the school could reasonably bear on the alleged retaliation here if Piety Foley has had no interaction with that department or section. *See Felder v. Dep't of Corr.*, 2022 WL 329205, at *11-12 (E.D. Pa. Feb. 3, 2022) (holding plaintiff could not rely on "isolated incidents involving other employees" to establish a "nebulous 'overarching culture' of harassment" where other incidents were not sufficiently connected to plaintiff's employment); *Cooper v. Universal Stainless & Alloy Prods., Inc.*, 2025 WL 1501883, at *5 (W.D. Pa. May 27, 2025) (finding plaintiff failed to establish relevancy for discovery featuring search terms including "political figures, organizations, and movements; and hate groups; as well as derogatory epithets and slurs targeted at not just [plaintiff's protected class], but other minorities,

11

nationalities, and religious groups outside of [plaintiff's] protected class").

As for Piety Foley's limited inquiry, this evidence *does* plainly bear on, or at least reasonably could lead to evidence that bears on, the causation prong of her retaliation claims. *See Oppenheimer Fund, Inc.*, 437 U.S. at 351. It was specifically represented to Piety Foley that her course change originated with the Dean's Office. Thus, record evidence regarding how the Dean's Office handles retaliation complaints for all faculty within its purview could lead to evidence bearing on Piety Foley's claims, as she is a member of that group. *See Mickelson v. N.Y. Life Ins. Co.*, 460 F.3d 1304, 1314-15 (10th Cir. 2006) (internal quotation omitted) ("[T]he testimony of other employees about their treatment by the defendant is relevant to the issue of the employer's discriminatory intent."); *Walker v. THI of N.M. at Hobbs Ctr.*, 2010 WL 552661, at * 13 (D.N.M. Feb. 8, 2010) (permitting discovery of other complaints alleging discrimination); *Jackson v. Montgomery Ward & Co.*, 173 F.R.D. 524, 527 (D. Nev. 1997) (stating that discovery of prior complaints of discrimination is permitted in order to prove that the reasons articulated for an adverse employment action are pretextual). Accordingly, Piety Foley has satisfied her burden in establishing relevance as to her limited inquiry.[6]

### ii.  Good Cause

Drexel contends that, even if the Retaliation Complaints Topic is relevant in part, good cause exists to grant its desired protective order because inquiry into this topic—both the original and as narrowed by Piety Foley—is disproportionate to the needs of the case. Drexel asserts

---

[6] While Piety Foley's initial letter (ECF No. 27) states that "Plaintiff will agree to limit the *formal internal complaints* to the College of Arts and Sciences" (emphasis added), her response to Drexel's Motion for Protective Order (ECF No. 30) proposes a broader limitation, namely "to complaints by and against College of Arts & Sciences faculty." Because Piety Foley has failed to establish the relevance of complaints involving *all Drexel employees*, the Court will adopt the limitation set out in her response to the Motion for Protective Order and limit discovery as to all complaints, not just formal internal complaints, to complaints by and against College of Arts & Sciences faculty.

that, even considering only complaints formally filed with Drexel, "it would take hundreds of hours to prepare a witness to testify about all information in Drexel's possession," because "Drexel's recordkeeping systems are not set up to readily identify all employee complaints that raised allegations of retaliation," and characterizes the effort as a "herculean task" of "preparing a witness to testify about every employee complaint containing retaliation."  Yet, Piety Foley correctly posits that this is a self-inflicted wound and thus does not demonstrate disproportionality or an undue burden.  Despite recognizing that "courts have held that an unwieldy record-keeping system, which requires heavy expenditures in money and time to produce relevant records, is simply not an adequate excuse to frustrate discovery," *see Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.*, 1991 WL 111040, at *2 (E.D. Pa. June 17, 1991), the Court, in recognition of Drexel's advisement at Oral Argument that it integrated a new electronic records system in 2022 that allows electronic access to case files, will limit this topic to formal internal complaints filed on or after January 1, 2022, to address the undue burden concerns.[7]

Accordingly, the Court shall partially grant Drexel's Motion for a Protective Order as to the Retaliation Complaints Topic considering both Piety Foley's failure to establish the relevance of that topic as originally stated and the implementation date of Drexel's electronic records system.  Deposition on this topic shall be limited to inquiry into: (1) complaints—via complaint to OED/EIC, complaint to PHRC and/or EEOC, or in a federal or state court—by or against College of Arts and Sciences faculty from January 1, 2021 through the present; and, (2)

---

[7] Drexel further argues that depositions on this topic implicate the privacy interests of non-parties.  Such a bare assertion, unsupported by any case law, does not support its argument of harm, unsubstantiated by specific examples or articulated reasoning.  *See Pansy*, 23 F.3d at 786 (citing *Cipollone*, 785 F.2d at 1121); *Reynolds*, 128 F.3d at 178 ("an argument consisting of no more than a conclusory assertion such as the one made here (without even a citation to the record) will be deemed waived."); Local Rule 7.1(c) ("Every motion not certified as uncontested, or not governed by Local Civil Rule 26.1(g), shall be accompanied by a brief containing a concise statement of the legal contentions *and authorities relied upon* in support of the motion." (emphasis added)).

complaints via formal internal complaint— by or against College of Arts and Sciences faculty from January 1, 2022 through the present.

**IV.    CONCLUSION**[8]

For the foregoing reasons, Drexel's Motion for a Protective Order shall be granted in part and denied in part as set forth in the accompanying order.

**BY THE COURT:**

**S/ WENDY BEETLESTONE**
_____
**WENDY BEETLESTONE, C.J.**

---

[8] In its Motion, Drexel asks for the Court to impose sanctions pursuant to its Policies and Procedures § III(C)(6). The Court declines to do so.